■ ROBERT DUNN et al., Appellants, v ELI FISHBEIN et al., Respondents.—In an action pursuant to Executive Law § 297 (9) to recover damages for unlawful discriminatory practices in housing, the plaintiffs appeal from an order of the Supreme Court, Westchester County (Sullivan, J.), entered April 29, 1985, which granted the defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (3) on the ground of lack of standing to sue as to the plaintiffs Robert Dunn and Curtis Pugh and pursuant to CPLR 3211 (a) (7) on the ground of failure to state a cause of action as to the plaintiffs Mark Kalish, Daniel Kabakoff and William Lipsky.

Ordered that the order is modified, on the law, by deleting the provision granting that branch of the motion which was to dismiss the complaint insofar as asserted by the plaintiffs Robert Dunn and Curtis Pugh, substituting therefor a provision denying that portion of the defendants' motion, and severing the action insofar as it is asserted by the plaintiffs Mark Kalish, Daniel Kabakoff and William Lipsky. As so modified, the order is affirmed, without costs or disbursements.

In or about May 1984 the plaintiff Robert Dunn, a Caucasian, visited an apartment building owned by the defendants located at 70 Croton Ave., in Ossining, N. Y., seeking to rent a two-bedroom apartment there. Early in June 1984 the superintendent of the building invited Dunn to view an apartment. While they were together at the building the superintendent informed Dunn that "Blacks, Puerto Ricans and Spanish were not permitted in the building, either as tenants or visitors". Dunn then informed the superintendent that his roommate was black. Thereafter the superintendent refused to accept a rental application from Dunn. On June 13, 14 and 15 the plaintiffs Mark Kalish, Daniel Kabakoff and William Lipsky, Caucasian employees of an antidiscrimination organization, separately visited the defendants' building as "testers" on behalf of Dunn and his black roommate Curtis Pugh. The superintendent refused to accept a rental application from Kalish after Kalish told him that his roommate was black. The superintendent told Kabakoff that there was no apartment available but asked to meet his roommate. Lipsky acted as Kabakoff's roommate and was told by the superintendent

that he wanted to meet him for the purpose of ascertaining if he was white.

Dunn, Pugh, Kalish, Kabakoff and Lipsky commenced this action pursuant to Executive Law § 297 (9) to recover damages for their mental anguish caused by the defendants discriminatory practices in violation of Executive Law § 296 (5) (a) (1) and § 296 (5) (a) (3) and their Federal counterparts, 42 USC §§ 1982 and 3604. The complaint sets forth five causes of action, one for each plaintiff in the above-listed order. The defendants moved for an order dismissing the complaint, *inter alia,* on the ground that the plaintiffs lacked standing to sue. Special Term granted the motion. This appeal ensued.

Special Term acted improperly in dismissing the causes of action asserted by Dunn and Pugh. To have standing the plaintiffs must demonstrate that they have suffered an injury and that they fall within a zone of interest which the statute protects *(see, Matter of District Attorney of Suffolk County,* 58 NY2d 436, 442; *New York Hearing Aid Socy. v Children's Hosp. & Rehabilitation Center,* 91 AD2d 333, 334, *appeal dismissed* 59 NY2d 915). As to the zone of interest that the statute in this case protects, Executive Law article 15, known as the Human Rights Law, provides that

"[i]t shall be an unlawful discriminatory practice for the owner * * * or managing agent of, or other person having the right to * * * rent or lease a housing accommodation * * * or any agent or employee thereof:

"(1) To refuse to * * * rent, lease * * * such a housing accommodation because of the race [and/or] color * * * of such person or persons" (Executive Law § 296 [5] [a] [1]).

The statute is to be "construed liberally for the accomplishment of the purposes thereof" (Executive Law § 300; *see, 300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 183). As to the element of injury regarding Dunn and Pugh, the defendants knew that Dunn was seeking a housing accommodation for himself and his roommate and the discriminatory practice followed Dunn's disclosure that his roommate was black. If the allegations of their complaint were established at a trial, a jury could find that both Dunn and his roommate Pugh were injured by the defendants who were motivated by racial bias *(see, Palmer v New York State Human Rights Appeal Bd.,* 47 NY2d 734). The fact that Dunn is a Caucasian is of no relevance *(see, e.g., Matter of Merrill v State Div. of Human Rights,* 45 AD2d 548).

The testers' individual causes of action were properly dis-

missed as they concede that they did not wish to rent an apartment and acted on behalf of Dunn and Pugh *(see, Zuch v Hussey,* 394 F Supp 1028, 1051). Bracken, J. P., Brown, Niehoff and Eiber, JJ., concur.