# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Brandy D. Hudgins

v.

Charles Higginbotham
and Preserve on the
Elizabeth Owners' Ass'n, Inc.

February 1, 2011

Case No. (Civil) CL10-2160

By Judge John W. Brown

This is a civil rights case involving complex questions of federal law, arising from alleged discrimination at a homeowners' association swimming pool. Defendants filed a demurrer to the plaintiff's four count complaint, alleging that plaintiff has failed to adequately plead facts supportive of (1) a cause of action under 42 U.S.C. § 1981; (2) a cause of action for violation of 42 U.S.C. § 2000a; (3) a cause of action under 42 U.S.C. § 1982; and (4) intentional infliction of emotional distress. For the reasons articulated below, the Court overrules the demurrer to the § 1981 and § 1982 counts, sustains the demurrer to the intentional infliction of emotional distress count, and dismisses the § 2000a count for lack of jurisdiction.

## I. *Jurisdiction*

That the subject matter jurisdiction of this Court encompasses the claim of intentional infliction of emotional distress is beyond question. *See, e.g.,* Va. Code § 17.1-513; *Laudenslager v. Loral,* 39 Va. Cir. 228, 229

(1996) (Chesapeake City) (sustaining defendants' demurrers to intentional infliction of emotional distress claims).

This Court has jurisdiction over the § 1981 and § 1982 claims under the well-settled concurrent state and federal jurisdiction recognized in such civil rights actions. *See, e.g., Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 639 (7th Cir. 2004) (citing *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990)); *Bradshaw v. General Motors Corp., Fisher Body Div.*, 805 F.2d 110, 112–13 (3d Cir. 1986) (addressing concurrent jurisdiction over § 1981 claims); *see also Testa v. Katt*, 330 U.S. 386, 391 (1947) (citations omitted); *Barber v. Rancho Mortg. & Inv. Corp.*, 32 Cal. Rptr. 2d 906, 901, and n. 1, 912 (Cal. App. 1994) (recognizing a § 1982 claim); *Dunn v. Fishbein*, 507 N.Y.S. 2d 29, 30 (N.Y. App. Div. 1986) (dismissing a § 1982 action for lack of standing); *Stovall v. Dunn*, 2002 Tenn. App. LEXIS 416, at *14 (Tenn. App. 2002) (reversing grant of summary judgment in a § 1982 action); *Brooks v. Maersk Line, Ltd.*, 2006 Va. Cir. LEXIS 192, at *3–7 (2006) (Norfolk City) (addressing a § 1981 claim).

With respect to the 42 U.S.C. § 2000a claim, the Court recognizes that state and federal courts are presumed to have concurrent jurisdiction over claims arising under federal law. *Tafflin v. Levitt*, 493 U.S. 455, 459–60 (1990) (quoting *Gulf Offshore Co., Div. of Pool Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981) ("In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests."). However, this Court does not have jurisdiction to entertain plaintiff's claims arising under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, et seq., because Congress has confined jurisdiction over such claims to the federal district courts. *See* 42 U.S.C. § 2000a-6(a) ("The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this title. . . ."); *id.* § 2000a-6(b) (exclusivity provision); *id.* § 2000a-3(c) (discussing the ability of the federal district courts to stay state/local enforcement proceedings brought under similar state/local laws); *Casa Marie, Inc. v. Superior Court of Puerto Rico*, 988 F.2d 252, 261 (1st Cir. 1993) ("Title II of [the] Civil Rights Act of 1964 constitutes [an] 'express' exception, as it vests exclusive jurisdiction in federal courts.") (citing *Dilworth v. Riner*, 343 F.2d 226, 230–32 (5th Cir. 1965)).

A lack of subject matter jurisdiction may be raised at any time and may be raised by any party or, as is the instance here, by the court, *sua sponte. E.g., Virginian-Pilot Media Cos., L.L.C. v. Dow Jones & Co.*, 280 Va. 464, 468, 469–70 (2010) (citations omitted). Consequently, the Court

dismisses Count II of the Complaint for want of subject matter jurisdiction and turns to the remaining claims.

## II. *Statement of Facts*

This action arises from an incident occurring at the Preserve on the Elizabeth ("the Preserve"), a community where the plaintiff lived with her parents at the time. The Preserve provided a swimming pool for residents, and, on June 29, 2009, plaintiff used her key to enter the pool, where she went swimming with her friend. Plaintiff and her friend were the only two African-American users of the pool at the time. Plaintiff alleges that an unknown white female stood outside the pool gate, taking pictures of plaintiff and her guest.

Defendant Higginbotham, Treasurer of the Preserve's Board of Directors, allegedly approached the plaintiff, telling her: "You don't look like you live in this neighborhood and you need to get out." Plaintiff refused to leave the pool, and Higginbotham falsely identified himself as the President of the defendant Homeowner's Association. Defendant Higginbotham then demanded that the plaintiff show her key. Higginbotham further warned plaintiff that he would follow her home to verify that she was a resident of the Preserve.

Ultimately, Higginbotham called the police and approached plaintiff with the two responding officers. Plaintiff produced her driver's license and pool key to the officers, who told Higginbotham that plaintiff was entitled to use the pool and that he had to leave plaintiff alone.

## III. *Demurrer Analysis*

The court reviews the demurrer to each of the remaining counts under familiar principles of Virginia law, examining the legal sufficiency of the facts alleged, rather than the strength of proof contained therein. *Glazebrook v. Board of Supervisors of Spotsylvania County*, 266 Va. 550, 554 (2003); *see also* Va. Code § 8.01-273. The Court correspondingly examines whether the pleading is sufficiently definite to find a legal basis for judgment on each count. *Eagle Harbor, L.L.C. v. Isle of Wight County*, 271 Va. 603, 611 (2006) (quoting *Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440 (1967)). A complaint need not, however, "descend into statements giving details of proof in order to withstand demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993) (citing *Hunter v. Burroughs*, 123 Va. 113, 129, 96 S.E. 360, 365 (1918)).

A. *Count I: 42 U.S.C. § 1981*

Section 1981 is designed to prohibit discrimination in contractual relations, stating in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. 1981(a) & (b).

Therefore, to establish a prima facie § 1981 action, a plaintiff must identify "an impaired 'contractual relationship' . . . under which the plaintiff has rights." *Domino's Pizza v. McDonald*, 546 U.S. 470, 476 (2006) (quoting 42 U.S.C. § 1981(b)) (footnote omitted). There exists an issue as to the plaintiff's status because she was living with her property-owning parents at the time of the incident. However, numerous cases establish that a third-party beneficiary relationship is sufficient to establish a § 1981 cause of action. *See, e.g., Denny v. Elizabeth Arden Salons, Inc.*, 456 F.2d 427, 426 (4th Cir. 2006); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.2d 1091, 1118–19 (10th Cir. 2001); *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333, 1339 (2d Cir. 1973). The plaintiff must furthermore demonstrate discriminatory motive on the part of the defendant in denying such rights by either (1) "direct or circumstantial evidence of discriminatory intent," or (2) "relying on the burden shifting framework established in *McDonnell Douglas*" if there is no direct evidence of discriminatory intent. *El v. Tek Sys.*, 311 F. Supp. 2d 516, 519 (E.D. Va. 2002) (addressing § 1981 in an employment context). *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden shifting framework "requires the plaintiff to establish a prima facie case of discrimination. If he does so, he is entitled to a presumption of unlawful discrimination, but once the defendant articulates a legitimate, non-discriminatory reason for its employment action, the burden shifts back to the plaintiff to show that the articulated reason is pretextual." *El*, 311 F. Supp. 2d at 519.

It is important to note, however, that *McDonnell Douglas* applies to summary judgment, a stage this action has not yet reached. *See, e.g., Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000). Therefore, because the Court is examining a demurrer to a § 1981 cause of action, the

burden is only upon the plaintiff to allege discrimination by pleading the four elements set forth below:

> (1) [s]he is a member of a protected class; (2) [s]he sought to enter into a contractual relationship with the defendant; (3) [s]he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) [s]he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers.

*Williams v. Staples, Inc.*, 372 F.3d 662, 667–68 (4th Cir. 2004) (citing *Murrell v. The Ocean Mecca Motel, Inc.*, 262 F.2d 253, 257 (4th Cir. 2001)). Extrapolating these elements to the instant case, where there is alleged interference with an existing contractual relationship (1) plaintiff, as an African-American, is a member of a protected class; (2) plaintiff, as a resident of the Preserve, was likely a third-party beneficiary of an agreement between her parents and the homeowner's association; (3) plaintiff was a resident of the Preserve, meeting the ordinary requirement to enjoy the pool, engaged in a protected activity; and (4) plaintiff's use of the pool was allegedly impinged by defendant's actions in a manner not applied to white residents. *See id.; see also Gregory v. Dillard's, Inc.*, 565 F.3d 464, 480 (8th Cir. 2009), *cert. denied*, 2009 U.S. LEXIS 8243 (Nov. 16, 2009). Contrary to defendants' allegations, plaintiff did plead a contractual right to use the pool: "As a lawful resident of the Preserve, plaintiff had the contractual right to swim at the Preserve's swimming pool without harassment based on her race." (Compl. ¶ 16.) Under the particulars of the instant case and in consideration of the arguments raised regarding the dismissed 42 U.S.C. § 2000a count, the Court observes that there is no "private clubs" exception to § 1982. *Tillman v. Wheaton-Haven Recreation Assn.*, 410 U.S. 431, 440 (1973).

The Complaint moreover provides an inference of purposeful discrimination: "Plaintiff and her friend were the only two African Americans who were at the pool that day. Higginbotham had asked none of the Caucasian guests present that day to show their key or to provide their address. Yet he demanded that Hudgins show her key." (Compl. ¶ 8.)

Thus, plaintiff has made sufficient allegations to support a § 1981 cause of action, and defendants' demurrer is overruled as to Count I.

B. *Count III: 42 U.S.C. § 1982*

Section 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens

thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

The elements of a § 1982 cause of action are case specific. *See Bradley v. Carydale Enters.*, 730 F. Supp. 709, 718 (E.D. Va. 1989). This Court is thus afforded some discretion in addressing the sufficiency of Count III and examines the following elements for a prima facie showing of discrimination for purposes of § 1982 (1) plaintiff's membership in a protected class; (2) an infringed property right; (3) compliance with conditions attendant to the property right; and (4) exercise of the property right was impinged by defendant's actions. *See id.* Like § 1981, § 1982 does not provide an exception for private clubs or facilities. *Tillman*, 396 U.S. at 440.

Plaintiff's status as a member of a protected class was properly pleaded and is unquestioned.

Of the four elements listed above, the second requires the most unique examination. The property rights protected by § 1982 are broadly construed; "the right to go and come at pleasure" is among the "great fundamental rights" protected by the precursor to § 1982, the Civil Rights Act of 1866. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 432 (1986). The right of plaintiff to "go and come at pleasure," as a resident and child of property owners at the Preserve thus seems reasonably protected by § 1982. This conclusion is further borne out by *Olzman v. Lake Hills Swim Club, Inc.*, which addressed the rights of swim club members' guests to use the facility: "It is reasonable to characterize the freedom of blacks to go and come as guests of a swim club member as sufficiently pertaining to a condition of property to be a right capable of being held under § 1982." *Olzman v. Lake Hills Swim Club, Inc.*, 496 F.2d 1333, 1339 (2d Cir. 1974). The court therefore held that the pool guests held property rights cognizable under § 1982. *Id.*

If the complaint is deficient in any of the four elements, it is in plaintiff's pleading of compliance with the conditions necessary to enjoy the property right. However, plaintiff does allege her status as a resident of the Preserve, the fact that she rightfully possessed a key to the pool, and she does not admit that she and her companion were disobeying any rules of the pool area. The primary condition at issue is plaintiff's status as a resident of the Preserve; because the elements of the cause of action are case specific and defendants' objections to plaintiff's presence at the pool seem based on her status (or lack thereof) as a resident, plaintiff's allegation of residence at the Preserve alone is sufficient for purposes of demurrer.

As for defendants' interference with plaintiff's property right to use the pool, the complaint adequately sets forth impingement of plaintiff's right. The plaintiff allegedly endured being photographed, verbal harassment, and an unfounded complaint to the police. At minimum, harassment claims are actionable within the § 1981 framework, and given

the tremendous jurisprudential overlap between the two statutes, the Court finds such allegations sufficient for purposes of § 1982. *See, e.g., Dennis v. Fairfax County*, 55 F.3d 151, 155 (4th Cir. 1995) (construing harassment claims under § 1981 in an employment action).

In sum, because plaintiff has pleaded membership in a protected class, a property right, compliance with the requisite conditions, and that defendants interfered with her enjoyment of that property right, the demurrer to Count III is overruled.

## C. *Count IV: Intentional Infliction of Emotional Distress*

The elements of a cause of action for the tort of intentional infliction of emotional distress are: (1) intentional or reckless conduct, where the wrongdoer specifically intended to inflict emotional distress or should have known that emotional distress would result from such conduct; (2) outrageous and intolerable conduct, judged by general standards of decency and morality; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *Womack v. Elridge*, 215 Va. 338, 342 (1974). All four elements of a claim for intentional infliction must be satisfied for such a count to survive demurrer. *See Russo v. White*, 241 Va. 23, 26–27 (1991). As a result, the Court need not, and does not, address all four elements.

In demarcating the contours of the intentional infliction tort, the Supreme Court of Virginia explained: "Liability is found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo*, 241 Va. at 27 (citation omitted). Correspondingly, this tort is generally disfavored in our Commonwealth. *See, e.g., Ruth v. Fletcher*, 237 Va. 366, 373 (1989).

Plaintiff's allegations pertaining to the second intentional infliction element appear to fall short of the requirement that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo*, 241 Va. at 27 (citation omitted). While defendants' conduct, accepting plaintiff's allegations as true for purposes of demurrer, is certainly objectionable, it arguably does not rise to the quantum required by Virginia case law. A demurrer "admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. *Harris v. Kreutzer*, 271 Va. 188, 195 (2006); *see also Taboada v. Daly Seven, Inc.*, 271 Va. 313, 317 (2006). Leaving the outrageousness question and the third element of causal connection aside, the Court accordingly turns to the alleged distress.

With regard to the fourth element, plaintiff alleges she suffers "grief, sorrow, shame, humiliation, embarrassment, anger, disappointment, worry, mental suffering, and severe emotional distress" as a result of defendants' conduct. There is no allegation of "objective physical injury," nor has plaintiff alleged the need for medical attention, or that she was confined to her home or a hospital, or that she lost income. *See, e.g., Russo,* 241 Va. at 28.

Focusing upon the fourth element, but construing the above elements of intentional infliction of emotion distress in concert, the allegations in the instant case are simply not severe to the extent that "no reasonable person could be expected to endure" the resulting distress described. *See, e.g., id.; see also Denny,* 456 F.3d at 436 ("If the distress plaintiff[] allege[s] was sufficient to be actionable, courts could become arbiters of every human interaction that culminated in embarrassment, disappointment, or hurt feelings."). Therefore, the demurrer to Count IV is sustained.

## IV. *Conclusion*

Upon the briefs and the oral argument of counsel, the Court rules as follows (1) Count II, alleging a violation of 42 U.S.C. §2000a, is dismissed for lack of subject matter jurisdiction; (2) the demurrer is overruled to Counts I and III, which allege violations of 42 U.S.C. §§ 1981 and 1982; and (3) the demurrer is sustained to Count IV, as plaintiff has not sufficiently pleaded facts supportive of the tort of intentional infliction of emotional distress.